STECKEL & SON et al., Appellants, v. MARTIN SMITH et al., Appellees.

**PRINCIPAL AND AGENT:** Mutual Rights—Agent Speculating on
1 Subject Matter. An agent who takes an assignment of the subject matter of his agency will be *presumed* to have intended to account to his principal for all profits realized.

PRINCIPLE APPLIED: Defendant purchased a farm of Morain and executed his $500 note to Morain. This left $2,000 to be raised in cash. Plaintiff was defendant's agent, and it was agreed that plaintiff would secure a loan for said $2,000. Defendant executed his $2,000 note and mortgage to plaintiff, his agent, but plaintiff advanced nothing thereon. The deed to defendant, and all other papers, were held by plaintiff in escrow. Plaintiff was unable to get the loan. Controversy ensued between defendant and Morain. Defendant claimed damages of Morain on one feature of the contract. Litigation was started. At this point of time, plaintiff, *with defendant's consent*, took an assignment from Morain of all his interest in the deal. For this assignment plaintiff paid Morain $1,625, and defendant waived his claim for damages against the vendor. Plaintiff later sued defendant on the $500 note to the vendor, and on the $2,000 note to himself, on the theory that the said assignment to him simply placed him in the shoes of the vendor.

*Held*, plaintiff was entitled to recover his $1,625 only—that he was not entitled to make a profit out of his principal, the defendant.

**TRIAL:** Reception of Evidence—Reopening Case—Laches. After full submission of a cause to the court, complaint may not be made of the refusal of the court to reopen the cause for additional testimony, when the materiality of such testimony was apparent from the inception of the trial.

**BILLS AND NOTES:** Consideration—Failure. The payee of a note may not recover thereon when the consideration is the unfulfilled promise of payee to pay a debt owed by the maker to a third party.

*Appeal from Davis District Court.*—D. M. ANDERSON, Judge.

SATURDAY, OCTOBER 20, 1917.

PLAINTIFF'S principal cause of action is based upon three promissory notes. There was one for $2,000 and one for $500, each dated March 5, 1913, with interest thereon at 7 and 6 per cent respectively, payable semiannually, and, in case of default in the payment thereof when due, both principal and interest to draw interest at 8 per cent. The $2,000 note was made payable to Steckel & Son; the $500 note to William H. Morain. Both were signed by Martin Smith, Mary Smith and David Smith, and secured by separate mortgages on the real estate hereinafter described. There was also a note for $531.45, bearing date March 1, 1913, with interest at 8 per cent, payable semiannually, and several smaller notes and accounts which are not at this time important. The first two notes grew out of the following transactions: On March 5, 1913, William H. Morain and Martin Smith entered into a written contract, by the terms of which the former, in consideration of $5,000 to be paid to him by the latter, agreed to convey to him the south one half of the northeast quarter and the north fractional one

half of the northwest quarter, and a pass way between said tracts on the northeast corner of the southeast quarter of the northwest quarter, all in Section 3-70-13, Davis County, Iowa, said consideration to be paid as follows: Grantee to assume and pay a note of $2,500, payable to H. K. McVey, with interest thereon at 6 per cent from and after March 27, 1913, secured by first mortgage upon the above premises, to pay $2,000 in cash, and to execute a note of $500, to be signed by himself, wife, and David Smith, his father, and to be further secured by a mortgage upon the above premises, which was to be subject to a prior mortgage of $2,500, and one for $2,000. The note for $531.45 was given in payment of a balance due appellant on a $1,300 note, and is payable to the order of Steckel & Son. Included in this note was an item of $72, referred to in the evidence as the La Force judgment. On the same day, W. J. Steckel wrote the deed, which was executed by Morain, the notes and mortgages above referred to, and also an application to the Mutual Benefit Life Insurance Company for a loan of $2,000. These notes and mortgages were signed by the parties about the 11th of April. The papers, after being duly executed, were turned over to W. J. Steckel, to be held by him, except the $500 note, which Martin Smith claims to have mailed to him on March 17th by mistake; but in any event, all of the above papers from the latter date have been in the possession of appellants. No money was advanced by appellants to Martin Smith or any other person, upon any of the notes, except that two installments of interest upon the McVey note were paid by the bank. The application for the $2,000 loan was declined, on the ground that the land was in separate tracts and remote from a public highway. Steckel notified Smith of his inability to get the loan from the insurance company. In the meantime, the owner of the land adjoining the above described tracts refused Smith the use of

the pass way referred to, and Smith immediately notified Steckel not to turn the $500 note over to Morain, as he intended to claim damages. Steckel failed to obtain a loan for Smith, who was, therefore, unable to carry out the terms of his contract with Morain; and, about the first of March, 1914, the latter commenced suit against Smith for possession of the premises. While this suit was pending, and on March 12, 1914, Steckel procured from Morain a written instrument purporting to assign to him all his right and interest in the warranty deed to Smith, the $500 note and some other small items, and providing for the endorsement of the $500 note to plaintiff without recourse, and containing some provision regarding the encumbrances upon the land. Appended to the above instrument was a brief statement signed by Martin Smith, in terms agreeing to the contract and waiving all claims against Morain. The defendants, for answer to plaintiffs' petition, admitted the alleged relationship of plaintiffs, which was wholly mutual, and that they signed the $2,000 note and mortgage to secure the same, and averred the execution thereof without consideration and for the purpose of procuring a loan. They also admitted the execution of the note for $531.45, but allege full payment thereof. Amendments were filed to plaintiffs' petition, and by defendants to their answer, reciting in detail many matters not necessary to be set out here, as there is little, if any, controversy concerning them. In so far as the same are material, they will be hereafter referred to. The court found that the note for $531.45 had been fully paid by the proceeds of the sale of the personal property described in the mortgage; that the mortgage had been entirely satisfied; that defendants should pay plaintiff $1,625, with interest on the notes for $2,000 and $500; and that defendants were indebted to the plaintiff upon other items aggregating $431.49; and rendered judgment against the defendants for $2,291.59, costs and attorney fees, and

decreed the foreclosure of the two real estate mortgages, and appointed W. J. Steckel receiver to take charge of the mortgaged premises, and rent and care for the same pending the further progress of this litigation. From this judgment and decree, plaintiff appeals.—*Affirmed.*

*Payne & Goodson,* for appellants.

*E. Rominger, T. P. Bence,* and *J. F. Scarborough,* for appellees.

1. PRINCIPAL AND AGENT: mutual rights: agent speculating on subject matter.

STEVENS, J.—I. It will be observed from the foregoing statement that all of the papers referred to were prepared by W. J. Steckel, and that the contract between Morain and Smith, the deed executed by Morain, the $2,000 note, the mortgage given to secure the payment thereof, and the application for the $2,000 loan, were, after their execution, turned over to appellant. He therefore held the contract and deed as the agent for both Smith and Morain, and the other papers, except the note for $531.45, as the agent of Smith. At the time Smith signed the application for the loan, he paid Steckel $25. Plaintiff, in his petition, asks judgment upon both notes for the full amount thereof, with interest thereon from date, according to their terms. Appellees contend that the court rightly allowed plaintiff only the amount paid by them to Morain, with interest thereon from March 12, 1914, the date of the payment; whereas appellant claims that, by the transaction with Morain, it, with the knowledge and consent of Smith, became the owner of the $500 and $2,000 notes, and that whatever profit resulted from the transaction with Morain should belong to appellant, and not to appellees. This is the principal controversy presented upon this appeal.

As before stated, the relation of plaintiffs and Martin Smith, during all of the time covered by the several transactions, was that of principal and agent. Steckel had un-

dertaken to procure a loan for Smith, to enable him to complete the purchase of the land from Morain, and the $2,000 note and mortgage were executed therefor. No money was advanced upon this note, and both parties, impliedly at least, understood that it was to have no force or effect until the loan was made. The $500 note, Smith undoubtedly sent to Steckel by mistake, which note Steckel held as his agent only, and he had previously received notice from defendant not to deliver the same to Morain, as he claimed damages on account of the controversy over the pass way between the two tracts of land. The result, therefore, of the alleged assignment, coupled with defendant's claimed consent, was to give effect to the $2,000 note as a valid indebtedness, and to waive such claim as defendant may have believed he possessed against Morain for damages, at a cost to plaintiff of $1,625. The manifest improbability of defendant's consenting to permit his agent to traffic in a note for $2,000 for which he had received no consideration, and a $500 note against which he believed he had a defense, in whole or in part, without even the probability of some reciprocal benefit to himself, is so contrary to ordinary transactions and methods of doing business as to require further consideration.

At the time of this transaction, a suit was pending against defendant for possession of the farm, and all papers forming the subject of the alleged assignment were held by plaintiff as the agent of Smith, while the unrecorded deed was held by him as the agent of both Smith and Morain. It is an elementary principle of the law of agency that, in all matters touching the subject matter thereof, the agent must act in absolute and perfect good faith toward his principal. The relation between them is fiduciary in character, and the vital principle of it is good faith, without which the relation cannot exist. That an agent who deals with the

property of his principal in such a way as to produce a
profit must account to the principal therefor, is familiar doc-
trine.  The Supreme Court of Missouri, in *Harrison v. Crav-
en,* 188 Mo. 590, 606, referring to the duty of the agent to
the principal, says:

"Assuming the fiduciary relation resulting from the
contract of agency, it is elementary law, not needing fortifi-
cation by citation of authority, that an agent may not spec-
ulate off of his principal in the subject matter of his employ-
ment, that he may not place himself in a situation where
self-interest impels him to overreach his principal, that he
may not seize benefits with both hands, coming as well as
going, and further, that a court of conscience, when a trust
results from such wrongful conduct, will stretch forth its
arm and strip him of all benefits acquired at the expense of
his principal and which should inure to the principal's ad-
vantage under the terms of the employment."

See, also, as bearing upon the question of the duty and
responsibility of the agent to the principal, *Bergner v. Berg-
ner,* 219 Pa. St. 113; *Eoff v. Irvine,* 108 Mo. 378; *People v.
Township Board,* 11 Mich. 222; *Holmes v. Cathcart,* (Minn.)
92 N. W. 956; *Supreme Sitting of the Order of Iron Hall v.
Baker,* (Ind.) 20 L. R. A. 210; Mechem on Agency, Secs. 1188
to 1191, inclusive; *American Mortgage Co. v. Williams,*
(Ark.) 145 S. W. 234.  In the absence of evidence from
which the contrary may necessarily be inferred, we may
presume that plaintiff, as the agent of Smith, in assuming
to procure a loan for him and in dealing with the papers of
appellee in his possession, intended to account to his prin-
cipal for whatever profits resulted therefrom.  It is undoubt-
edly true that the principal may consent that the agent may
deal with the property for his own benefit, and may waive
any rights to profits accruing from transactions in relation
thereto; but the situation in which the defendant was
placed and the relation between the parties to this suit

were not such as to lead to the conclusion that the transaction in question was of this character. In the absence of evidence to the contrary, it must be presumed that defendant, at the time he signed the brief memorandum appended to the alleged contract of assignment, did not intend to aid his agent to speculate upon the papers held by him at a profit of $875. As above stated, the $2,000 note, which was at the time in the possession of Steckel, did not represent an indebtedness due from defendant to plaintiff or any other person. Steckel would have been compelled to deliver both notes to defendant upon demand. It is quite inconceivable that either party understood, or intended, that the transaction was in the interest of plaintiff and without regard to the reasonable interests of the defendant.

There is no apparent reason why Smith should desire thus to deal with Steckel or consent that he be so dealt with. During all the time of the controversy, Steckel had been the confidant and agent of the defendant, as well as of Morain. Smith, in agreeing to the alleged assignment, must have understood that he was to be at least so far benefited thereby as to receive compensation for the damages he claimed against Morain, and be placed in a position to complete the purchase of the land. There is no other way of reconciling the transaction and conduct of Steckel with the integrity and good faith required of an agent. He was a man of large business experience and capacity, whom Smith had constituted his agent and confidant, and was bound to deal with him with perfect fidelity. The transaction as above construed was wholly provident upon the part of Steckel. He stood to lose nothing. The payment of the notes was amply secured, while, upon appellant's theory, the transaction from the viewpoint of appellees was wholly benevolent. There is some evidence of conduct and claims upon the part of Smith seemingly inconsistent with the

conclusion above stated, but they all occurred after the execution of the above assignment, and refusal of Steckel to close the deal, and should not be construed too strictly against him.

The court in its decree found that plaintiff was entitled to recover $1,625, the amount paid for the alleged assignment, with 7 per cent interest from March 12, 1914. This finding of the court was in accordance with familiar principles of equity, and does full justice between the parties.

It is proper in this connection to refer

2. TRIAL: reception of evidence: reopening case: laches.

to the claim of appellant that the court, upon application made therefor, should have set aside the submission of this cause and permitted them to offer oral evidence upon the question of the understanding and agreement between Steckel and Smith at the time of the execution of the assignment and the memorandum of consent. Counsel states that this evidence was not deemed material until after the court had announced its findings. It appears that appellee from the beginning of this suit claimed the benefit of this transaction, and that the $2,000 note had been executed for the purpose of obtaining a loan, and that appellants had never advanced any money on either of the notes until the $1,625 was paid to Morain. It would seem, therefore, that the materiality of this testimony was apparent before the cause was finally submitted. We do not think the court abused its discretion in refusing to set aside the submission and receive further evidence.

II. The court found that the note for

3. BILLS AND NOTES: consideration: failure.

$531.45 and the chattel mortgage given to secure the same had been fully paid and satisfied by the sale of the property covered thereby, and that plaintiffs were not entitled to judgment or foreclosure thereon. This finding of the court is also crit-

icised. Included in this note was an item of $72, which represented a judgment for that amount in favor of Dr. La Force against Smith. At the time the note was given therefor, Steckel agreed to pay this judgment, but it appears from the evidence that he has not done so, and the court properly refused to enter judgment in plaintiff's favor therefor. The finding of the court upon this point was right.

III. There are some other small items about which there is some controversy, but they do not call for either a modification or a reversal of the decree and judgment of the trial court, and no good purpose would be served by discussing them in detail. The judgment of the lower court is—*Affirmed.*

GAYNOR, C. J., WEAVER and PRESTON, JJ., concur.